# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL K. BROWN,

Petitioner,

v.

CHRISTINE SUTER,

Respondent.

Case No. 22-CV-934-JPS

**ORDER**

---

## 1.    INTRODUCTION

Before the Court is Petitioner Michael K. Brown's ("Petitioner") amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 8. The Court screened the amended petition under Rule 4 of the Rules Governing Section 2254 Proceedings and found that all three of Petitioner's grounds for relief survived screening. ECF No. 11. Respondent Christine Suter[1] ("Respondent") answered the amended petition, ECF No. 14, which, under the Court's screening order, triggered a briefing schedule in support of and in opposition to the amended petition, ECF No. 11 at 8. All briefs have now been submitted, ECF Nos. 19, 21, 22, and the matter is ripe for the Court's review. For the reasons set forth below, the Court finds that the amended petition is without merit and, therefore, will deny it. The action will accordingly be dismissed with prejudice.

---

[1] The Clerk of Court is directed to substitute Christine Suter for Warden Peter Jaeger as the respondent on the docket. *See* ECF No. 21 at 1 n.1 ("Brown is currently in the custody of Warden Suter at Chippewa Valley Correctional Treatment Facility. She is therefore the proper Respondent.").

## 2.    FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2018, Petitioner entered an Associated Bank in East Troy, Wisconsin with his hand over his face, threw a bag on the counter, and demanded that a teller fill the bag with money. *State v. Brown*, Nos. 2020AP552-CR & 2020AP553-CR, 2021 WL 8649427, at *1 (Wis. Ct. App. May 5, 2021). Petitioner then told the tellers to wait in the bathroom for five minutes before coming out. *Id.* Witnesses told police that a tan or gold Buick was in the vicinity of the bank at the time of the robbery, that a male jumped into the back of the car, and a female driver drove away. *Id.* Witnesses provided a partial license plate number, eventually leading police to identify the vehicle as belonging to Petitioner's great-aunt. *Id.* Petitioner's sister later saw photos from the bank robbery and identified Petitioner as the robber. *Id.* Another person who knew Petitioner also identified him from photos of the bank robbery. *Id.*

On July 6, 2018, Petitioner was charged in Walworth County Case No. 2018CF000347 with one count of robbery of a financial institution as a party to a crime. *Id.*[2] Following his arrest for that charge, Petitioner was charged in a separate complaint in Walworth County Case No. 2018CF000371 with one count of attempted escape. *Id.*[3]

---

[2]*See also State v. Brown*, No. 2018CF000347, *available at* https://wcca.wicourts.gov/caseDetail.html;jsessionid=20A3258A2AB4A8EE49D4 C0DDC5A60BE8.render4?caseNo=2018CF000347&countyNo=64&mode=details (last visited Mar. 18, 2024).

[3]*State v. Brown*, No. 2018CF000371, *available at* https://wcca.wicourts.gov/caseDetail.html;jsessionid=20A3258A2AB4A8EE49D4 C0DDC5A60BE8.render4?caseNo=2018CF000371&countyNo=64&mode=details (last visited Mar. 18, 2024).

Petitioner pled guilty to both charges. *Id.* At the plea hearing, the circuit court conducted a colloquy with Petitioner. *Id.*; ECF No. 14-6. The court confirmed that Petitioner reviewed the plea questionnaire and waiver of rights form with his counsel, Attorney James Duquette ("Attorney Duquette"), "very, very carefully," and that Petitioner only signed the form after he had "sufficient time to go through it, understand it, and agree with it." ECF No. 14-6 at 2, 4. The court further confirmed that Petitioner was able to read and understand the form and that he "underst[oo]d everything that[] [was] going on." *Id.* at 5. The court reviewed both plea offers that Petitioner had received and confirmed that Petitioner had discussed both offers with Attorney Duquette, and that he had chosen to reject one and accept one of his own free will. *Id.* at 2–4. The court then assured itself that Petitioner had not had any alcohol, medication, or controlled substances in the twenty-hours prior to the hearing. *Id.* at 5.

Next, the court reviewed the waiver of rights form with Petitioner, which addressed Petitioner's "constitutional rights surrounding [his] right to trial." *Id.* Petitioner stated that he understood that he had the right to a trial and that he could have the right to a jury trial in which all twelve jurors would have to agree unanimously whether he was guilty. *Id.* Petitioner confirmed that he understood that he did not have to plead guilty and could remain silent, take the matter to trial, and "forc[e] the state to prove it." *Id.* at 5–6. He also confirmed that he understood that he had the right to remain silent at trial, as well as the rights to testify, present evidence, be represented by counsel at trial, and confront and cross-examine witnesses. *Id.* at 6. Petitioner stated that he understood the maximum penalties of his charges, that the court would not be bound by any recommendations and could give the potential maximum penalties, and that he was not confused

by any of the court's questions throughout the colloquy. *Id.* at 9–11. He also confirmed that he was satisfied with how Attorney Duquette handled the case and that Attorney Duquette did not talk him into his guilty plea. *Id.* at 11.

Most pertinent to Petitioner's post-conviction proceedings and the instant amended petition, the court next addressed the elements of the crimes to which Petitioner was pleading guilty. *Id.* at 6–7. The court noted that the state would need to prove the elements of the crimes beyond a reasonable doubt and referred to jury instructions attached to the plea questionnaire. *Id.* Those jury instructions were "1479 for robbery, . . . a second one of party to the crime, and a third one for escape from custody." *Id.* The court confirmed that Attorney Duquette had reviewed the jury instructions with Petitioner. *Id.* The court also confirmed that Attorney Duquette had "discuss[ed] the police reports as related to each element" with Petitioner so that he "understood what the state had to prove and whether they could do that." *Id.* at 7. Petitioner stated that he agreed, "based on [his] knowledge of the police reports and what happened and what the[] elements [of the crimes to which he was pleading guilty] are, that the state could prove [him] guilty beyond a reasonable doubt of . . . both crimes." *Id.*

After finding Petitioner's plea to be "knowing, voluntary, [and] intelligent," the court reviewed the charging documents with Petitioner and then asked Petitioner to state his plea thereto. *Id.* at 12. With respect to the charge of robbery of a financial institution as a party to a crime in Walworth County Case No. 2018CF000347, the court asked Petitioner,

> how do you plead that you did, on Tuesday, June 19, 2018, in the village of East Troy, Walworth County, Wisconsin, as a party to the crime, you did, by use of force or threat of imminent force, take money from an individual or the

presence of an individual of a financial institution, namely, the Associated Bank, commonly called robbery of a financial institution? What is your plea?

*Id.* at 12–13. Petitioner responded "Guilty." Petitioner confirmed that he reviewed the criminal complaint containing this charging language and that it was true. *Id.* at 13. A similar exchange took place with respect to the escape charge in Walworth County Case No. 2018CF000371. *Id.* at 13–14.

At Petitioner's sentencing hearing, both the State and Attorney Duquette—multiple times—referred to the robbery charge to which Petitioner pled guilty as "robbery of a financial institution." ECF No. 14-7 at 7–8, 14, 14–15, 18, 22, 23, 24. At one point, Attorney Duquette specifically distinguished the crime of robbery of a financial institution from robbery. *Id.* at 14–15 ("And the community . . . should not tolerate the robbery of financial institutions. I think it's safe to say that financial institutions deserve some element of additional respect . . . . And that's probably why it's a separate crime than simply robbery. It's not a gas station or a liquor mart; it's a completely separate offense.").

The State argued at the sentencing hearing that Petitioner's bank robbery was premeditated. *Id.* at 8. Petitioner and his accomplice had driven to the bank the day before the robbery because they were looking for a bank "sort of out in the middle of nowhere," and they watched videos on bank robberies to plan the crime. *Id.* at 8–9. In his remarks, Attorney Duquette described Petitioner as having a high school education and post-high school training and certifications, as well as employment experience in "trade, mechanical, [and] technical repair work." *Id.* at 13. In his own statement to the court, Petitioner stated that he was "sincerely apologetic to the bank personnel." *Id.* at 29. At the conclusion of the sentencing hearing,

the circuit court sentenced Petitioner to twenty years on the robbery of a financial institution charge, bifurcated as eight years of initial confinement and twelve years of supervision, and two years consecutive on the escape charge, bifurcated as one year of initial confinement and one year of supervision. *Id.* at 37; *Brown*, 2021 WL 8649427, at *1.

Petitioner filed a postconviction motion seeking to withdraw his guilty plea to the robbery of a financial institution charge on the ground that he did not understand the nature of the charge. *Brown*, 2021 WL 8649427, at *1. Specifically, he alleged that at the plea colloquy, the circuit court relied upon the jury instructions attached to the plea questionnaire to ascertain whether Petitioner understood the nature of the offense, but that those jury instructions were incorrect. *Id.* at *2. Attorney Duquette attached the jury instruction for armed robbery, while Petitioner was charged with robbery of a financial institution. *Id.* Petitioner argued that "he did not understand that the State must prove that the victim was a financial institution." *Id.* (internal bracketing omitted).

The circuit court held a hearing on the motion. *Id.*; ECF No. 14-8. Attorney Duquette testified at the hearing. ECF No. 14-8 at 5. Attorney Duquette testified that he researched the charge of robbery of a financial institution but that he was unable to locate a jury instruction "right on point for this particular offense." *Id.* at 7–8. In the time since Petitioner's sentencing, however, Attorney Duquette's office updated its jury instruction binders, and he was able to find one "exactly on point" prior to the postconviction motion hearing. *Id.* at 8–9. Attorney Duquette testified that he did not recall whether he gave Petitioner jury instructions towards the beginning of his representation, but that he "probably [did] not" because there wasn't one on point. *Id.* at 9. Instead, he likely discussed "the

elements of the charge based on the pleadings" and "what the statute sa[id]" with Petitioner, though he does not believe that he gave Petitioner a copy of the statute. *Id.* at 9, 18. Attorney Duquette did not recall whether he discussed "the element that the offense occurred at a financial institution" with Petitioner because "a vast majority of [thei]r discussion was focused on the element about force or threat of force." *Id.* at 10. However, he testified that he and Petitioner "certainly talked about the institution and the context, that [the crime] had occurred at a bank," though he did not recall "any discussion . . . about the fact that [it] . . . would be an issue at trial." *Id.* at 10, 12. Attorney Duquette testified that he and Petitioner reviewed the criminal complaint at the outset of his representation. *Id.* at 10.

Attorney Duquette testified that Petitioner never asked him whether Associated Bank was a financial institution or for clarification on what a financial institution was. *Id.* at 12–13. Attorney Duquette believed that Petitioner would not have difficulty understanding terms like "financial institution." *Id.* at 13. He also testified that he "believe[d]" that when he went over the plea questionnaire and jury instructions with Petitioner, he went through his typical practice of placing a copy of "the criminal complaint or information next to it and on the table in court so [they] c[ould] reference that language as well." *Id.* at 16. In this case, he explained that the criminal complaint and information contained the language "financial institution" in the heading of the charge. *Id.* During their meeting, Attorney Duquette had Petitioner go through each of the elements for armed robbery and initial them to indicate that they were discussed, but no element that the victim was a financial institution was written in or initialed. *Id.* at 20. However, Attorney Duquette testified that he believed that Petitioner would have known that Associated Bank was the victim. *Id.* at 21–22.

The court ordered further briefing on specific state case law, *id.* at 31–35, and the hearing reconvened several weeks later once that briefing had concluded, ECF No. 14-9. At the reconvened hearing, the court acknowledged that its plea colloquy was defective. ECF No. 14-9 at 3. Nonetheless, the court denied the motion. *Id.* at 6. The court explained that the only difference between the armed robbery and robbery of a financial institution charges was "the kind of victim," but that "[t]he gravamen of the offense is the robbery." *Id.* at 4. It reasoned that Petitioner knew what he was pleading to because it was "clear from the criminal complaint." *Id.* And at the plea colloquy, the court had confirmed that Petitioner had reviewed the criminal complaint with Attorney Duquette. *Id.* at 5. Further, the element that the victim was a financial institution was part of "the factual basis" to which Petitioner agreed when he pleaded guilty. *Id.* at 4. Specifically, when the court asked for Petitioner's plea, it expressly incorporated the element that the victim was a financial institution and referred to the charge as "robbery of a financial institution." *Id.* at 4–5. Based on the entire record, the court found there to be no prejudice because Petitioner knew "exactly what he was pleading to." *Id.* at 5–6.

Petitioner appealed. *Brown*, 2021 WL 8649427. On review, the Wisconsin Court of Appeals affirmed the circuit court's holding. *Id.* at *4. The Wisconsin Court of Appeals agreed that the totality of the record supported a finding that Petitioner understood the charge at issue, including the element that the victim must be a financial institution. *Id.* at *3. This was so, the court explained, for several reasons. *Id.* First, Attorney Duquette testified that Petitioner recognized Associated Bank—a financial institution—as the victim. *Id.* Attorney Duquette also testified that he reviewed the criminal complaint, which specifically and explicitly charged

the crime of robbery of a financial institution, with Petitioner. *Id.* Petitioner told the circuit court that he reviewed and understood the complaint, which refers to Associated Bank specifically as a financial institution. *Id.* Petitioner stated that the facts in the criminal complaint were true. *Id.* When the court asked Petitioner to state his plea, the court included the element that the victim be a financial institution and referred to Associated Bank as a financial institution. *Id.* Further, on the party to a crime jury instruction, the handwritten words "robbery of a financial institution" appear, though this element was not written on the robbery jury instruction. *Id.* at *4. Petitioner initialed next to this addition on the party to a crime jury instruction. *Id.* The plea questionnaire also listed the charge as robbery of a financial institution. *Id.* And, finally, Petitioner apologized to "bank personnel" at sentencing. *Id.*

Petitioner petitioned to the Wisconsin Supreme Court, which denied review on September 14, 2021. *State v. Brown*, 991 N.W.2d 696 (Wis. 2021). Petitioner thereafter timely filed the instant § 2254 action. His amended petition seeks habeas relief on the following grounds: (1) his defense counsel at sentencing attached the incorrect jury instruction to the plea questionnaire rendering Petitioner's plea not intelligently entered because he did not understand the essential elements of the offense ("Ground One"); (2) his defense counsel was ineffective by attaching the wrong jury instruction to the plea questionnaire and by failing to discuss the elements of the crime with Petitioner ("Ground Two"); and (3) the circuit court failed to meet its mandatory duties during the plea colloquy ("Ground Three"). ECF No. 11 at 3 (citing ECF Nos. 8, 9). In his brief, Petitioner clarifies that Grounds One and Three are really the same ground. ECF No. 19 at 14. Thus, the Court will refer to the claim underlying Grounds One and Three as

simply "Ground One," and it will refer to the ineffective assistance of counsel claim as "Ground Two."

### 3. LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court

unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

## 4. ANALYSIS

### 4.1 Ground One

In Ground One, Petitioner primarily argues that the Wisconsin Court of Appeals' decision was contrary to, and an unreasonable application of, Supreme Court precedent regarding the requirement that a guilty plea be knowing, intelligent, and voluntary to satisfy due process. ECF No. 19 at 3; *see also* 28 U.S.C. § 2254(d)(1). He briefly argues as well that the Wisconsin Court of Appeals' determination of the facts was unreasonable in light of the evidence presented. ECF No. 19 at 10; 28 U.S.C. § 2254(d)(2).

The principles surrounding whether a plea is knowing, intelligent, and voluntary are "well settled." *Virsnieks v. Smith*, 521 F.3d 707, 714 (7th Cir. 2008). A plea cannot be voluntary "in the sense that it constituted an intelligent admission that [the defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Whether a plea was entered knowingly and voluntarily is determined from 'all of the relevant circumstances surrounding it.'" *Virsnieks*, 521 F.3d at 714 (quoting *Brady v. United States*, 397 U.S. 742, 749 (1970)).

The Court initially takes up Petitioner's second argument—that the Wisconsin Court of Appeals' determination of the facts was unreasonable in light of the evidence presented—because "overcom[ing] the state court's factual determination that [Petitioner] knew" that the victim must be a

financial institution for purposes of his charge for robbery of a financial institution is "a threshold matter." *Id.* at 715. The Court defers to the state court's factual findings if they are adequately supported by the record, and it can also "rely on any resolution of factual disputes fairly inferred from that record." *Cruz v. Miller*, No. 92-3141, 1993 WL 83427, at *4 (7th Cir. Mar. 23, 1993) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Andersen v. Thieret*, 903 F.2d 526, 529–30 (7th Cir. 1990); and *Bryan v. Warden, Ind. State Reformatory*, 820 F.2d 217, 221 (7th Cir.), *cert. denied*, 484 U.S. 867 (1987)).

Petitioner has failed to show that the Wisconsin Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner focuses on the fact that the trial court conceded that its plea colloquy was defective. ECF No. 19 at 10. However, even in cases in which the *charging documents* did not explicitly state an element of the crime, courts have found a plea to be knowing, intelligent, and voluntary if "strong suggestions to th[e] effect" of the missing element are contained in the charging documents and statements made on the record in court, such that the petitioner "must have known" the elements of the offense. *Virsnieks*, 521 F.3d at 715. Petitioner's case far exceeds even that threshold.

Specifically, the record shows that Petitioner is educated and has technical employment experience. Attorney Duquette testified that he believed that Petitioner understood what the term "financial institution" means and that a financial institution was the victim in this case. Attorney Duquette testified that he reviewed the criminal complaint with Petitioner. The facts surrounding the crime, as set forth in the criminal complaint that Petitioner reviewed with Attorney Duquette and then affirmed were true, describe the crime of robbery of a financial institution and use the term

"financial institution" multiple times, including to describe Associated Bank. This is the same charge with which Petitioner had been charged since the beginning of his criminal cases. Petitioner also stated that he had reviewed the plea questionnaire with Attorney Duquette, which again listed the charge of robbery of a financial institution. Although the financial institution element was not written in on the jury instructions for the robbery charge, Petitioner placed his initials next to a handwritten note stating "robbery of a financial institution" on the party to a crime jury instruction, which he had reviewed with Attorney Duquette.

Prior to the robbery, Petitioner specifically researched bank robberies and scouted the area for the appropriate bank to rob, demonstrating his intent to target a financial institution. At sentencing, Petitioner apologized to bank personnel, which confirms that he understood the identity of the victim of the crime. Finally, and also at sentencing, Attorney Duquette specifically distinguished robbery of a financial institution from robbery, going so far as to refer to it as a "completely separate offense" due to the identity of the victim, and both Attorney Duquette and the State referred to the charge as "robbery of a financial institution" multiple times. On the evidence presented to support these facts and inferences, the Wisconsin Court of Appeals' decision was not unreasonable.

The Court turns next to Petitioner's argument that the Wisconsin Court of Appeals' decision was contrary to, and an unreasonable application of, Supreme Court precedent. Petitioner relies heavily on *Henderson* to support his argument that the Wisconsin Court of Appeals' decision was contrary to clearly established Supreme Court precedent. ECF

No. 19 at 6 (citing *Henderson*, 426 U.S. 637) (arguing that *Henderson* presents "materially indistinguishable facts" to Petitioner's case).

In *Henderson*, the defendant, who possessed "unusually low mental capacity," was originally charged with first degree murder, but he pled guilty to second degree murder—an offense for which he was never formally charged. 426 U.S. at 645, 647. The Court reviewed the record and found that there was no explanation of the second degree murder charge (and, specifically, the requisite intent element) by the judge, nor was there "a representation by defense counsel that the nature of the offense ha[d] been explained to the accused" or grounds for the presumption that defense counsel "explain[ed] the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.* at 647. There was further nothing in the record showing that the defendant stipulated to or admitted his intent, nor did he make a "factual statement or admission necessarily implying that he had such intent"; indeed, at his sentencing hearing, his attorney instead argued that the defendant "meant no harm" to the victim. *Id.* at 643, 646. The Court expressly declined to decide "whether notice of the true nature, or substance, of a charge *always* requires a description of every element of the offense" and "assume[d] it does not." *Id.* at 647 n.18 (emphasis added). But because "intent is such a critical element of the offense of second-degree murder," the Court found that due process required notice under the circumstances of that case. *Id.*

Contrary to Petitioner's arguments, the facts here—apart from alleging the same constitutional violation—could not be more different from those in *Henderson*. As noted, Petitioner was charged from the outset of his criminal cases with robbery of a financial institution, and he benefitted from a post-high school education and technical employment

experience. The element at issue was set forth in the criminal complaint, which Petitioner confirmed he reviewed with Attorney Duquette, understood, and affirmed as true. Petitioner further initialed next to the handwritten addition of the element at issue on the party to a crime jury instruction. And far from neglecting to make any statement "necessarily implying" the allegedly omitted element, Petitioner apologized to bank personnel at his sentencing. *Henderson*, 426 U.S. at 646.

Simply put, "[t]he unavoidable inference from this evidence is that [Petitioner] did understand" that he committed, and was being charged for, the crime of robbery of a financial institution. *Cruz*, 1993 WL 83427, at *4; *see also Pigg v. Hanks*, 103 F.3d 133 (7th Cir. 1996) (facts distinguishable from *Henderson* where the petitioner "never expressly negated" the allegedly omitted element); *Moore v. Armontrout*, 928 F.2d 288, 292 (8th Cir. 1991) (facts distinguishable from *Henderson* where the petitioner "responded affirmatively when asked if he had discussed the charges with his attorney, if he was satisfied that his attorney had all the necessary facts to give adequate advice, if he had enough time to discuss the charges with his attorney, if he had been advised of his legal rights, if he was satisfied with the services of his attorney, and if he understood the consequences of a guilty plea and the range of punishment for the crimes to which he was pleading guilty").

Nor was the Wisconsin Court of Appeals' decision an unreasonable application of Supreme Court precedent. Under *Henderson*, "the due process requirement of real notice could be satisfied *either* by 'an explanation of the charge by the trial judge, *or* at least a representation by defense counsel that the nature of the offense has been explained to the accused.'" *Harvey v. McCaughtry*, 11 F.3d 691, 696 n.8 (7th Cir. 1993) (citing

*Henderson*, 426 U.S. at 647) (emphases added); *see also Hicks v. Franklin*, 546 F.3d 1279, 1285 (10th Cir. 2008) ("In the ordinary case, a correct statement of the law from the trial judge will assuage any doubts that a defendant has not received notice of the nature of the charges against him.").

As to the former, "giving real notice" does not "require[] the court to describe each element of the offense." *Harvey*, 11 F.3d at 695; *see also Henderson*, 426 U.S. at 647 n.18. Instead, a trial judge's "description of the charges [that] set[s] forth the elements" is sufficient to provide a defendant with the constitutionally required notice of the nature of the charges against him. *Harvey*, 11 F.3d at 695–96 & n.8. Indeed, even a description that "d[oes] not recite the technical elements of th[e] offense," but nonetheless provides a "less formal explanation of the charge" is sufficient. *Cruz*, 1993 WL 83428, at *5. Here, as the Wisconsin Court of Appeals recognized, the circuit court recited all elements of the robbery of a financial institution charge, and affirmatively stated that Associated Bank is a financial institution, when it described the charge as stated in the criminal complaint and asked Petitioner for his plea. Thus, for this reason alone, the Wisconsin Court of Appeals' decision was not an unreasonable application of U.S. Supreme Court precedent.

As the Wisconsin Court of Appeals further found, there was also "ample evidence" that, at a minimum, Attorney Duquette explained the nature of the robbery of a financial institution charge "in sufficient detail" to give Petitioner notice of the charge to which he was pleading guilty. *Harvey*, 11 F.3d at 693 n.3; *Henderson*, 426 U.S. at 647. Again, the *Henderson* Court expressly declined to rule that the constitutionally required notice "*always* requires a description of every element of the offense" and "assume[d] it does not." 426 U.S. at 647 n.18 (emphasis added). Thus, the

Wisconsin Court of Appeals' ruling that a defense attorney's explanation of the nature of a charge in sufficient detail is adequate—even if that explanation lacks a description of each specific element—is neither an incorrect nor unreasonable application of clearly established Supreme Court precedent.

Lower courts have adhered to this holding.[4] The Eleventh Circuit explains, for example, that due process requires "[a]t the very least" an explanation of the "'critical elements' of the charged offense, such as the element defining the requisite intent" for a murder charge, which was at play in *Henderson*. *Gaddy v. Linahan*, 780 F.2d 935, 945 (11th Cir. 1986) (citing *Henderson*, 426 U.S. at 647 n.18). The same is true for complex charges that are "not readily understandable by a layman," for charges that are assessed against defendants with "minimal intelligence," or when "the sentence to be imposed is substantial." *Id.* (citing *Nash v. Israel*, 707 F.2d 298, 302 n.6 (7th Cir. 1983) and *Alessi v. United States*, 593 F.2d 476, 480 (2d Cir. 1979)). Outside of these circumstances, "a rote reading of the indictment or charging document may be sufficient to put a defendant on notice of the elements of the charge . . . ." *Id.* (citing *Paulson v. Black*, 728 F.2d 1164, 1166 (8th Cir.), *cert. denied*, 469 U.S. 931 (1984)).

---

[4]Circuit, rather than Supreme Court, precedent does not in and of itself constitute "clearly established" federal law for purposes of habeas corpus, but it nevertheless may help guide the inquiry. *See Lewis v. Zatecky*, 993 F.3d 994, 1000 (7th Cir. 2021) ("For purposes of section 2254(d), the only relevant law is that which is 'clearly established Federal law, as determined by the Supreme Court of the United States[.]' . . . . Our own decisions, as well as those of other circuits or state courts, are informative only insofar as they may shed light on our understanding of the authoritative Supreme Court precedents.") (quoting 28 U.S.C. § 2254(d)(1)).

In *Nash*, the Seventh Circuit explained that several factors are relevant "in a case in which the defendant stated at the guilty plea proceeding that he fully understood the charge, but later claimed that he had not," which is what occurred here. 707 F.2d at 302. Those factors include (1) that the defendant received a copy of the charging document specifying the allegedly omitted element and (2) that the trial judge read the charging document to the defendant at the guilty plea proceeding. *Id.* The First Circuit has also noted that, in some cases, a petitioner may receive a "more effective explanation" of the charge from his counsel through a description of the charge than through a "formal incantation of technical elements." *McGuirk v. Fair*, 622 F.2d 597, 599 (1st Cir. 1980).

The robbery of a financial institution charge is not a highly complex charge, such as the murder charges most often analyzed in cases applying *Henderson*. The element that the victim must be a financial institution is readily capable of being understood by a layman, particularly an educated person, such as Petitioner. The element further is not critical to the charge in the same way that intent is critical to a murder charge. As the circuit court noted, the underlying conduct is still robbery, with the simple addition that the victim be a financial institution. Petitioner reviewed the criminal complaint, confirmed that he understood it, and affirmed its truth, and the trial court read the charge—including the allegedly omitted element—as set forth in the criminal complaint to Petitioner prior to receiving his guilty plea. Petitioner also reviewed the charging documents with Attorney Duquette, apparently thoroughly, which is buttressed by his initials as to the addition of "robbery of a financial institution" to the party to a crime jury instruction. Accordingly, the Wisconsin Court of Appeals did not unreasonably apply clearly established Supreme Court precedent for the

additional reason that Attorney Duquette explained the nature of the charge to Petitioner in sufficient detail, including most importantly here, through the charging documents. For all these reasons, Ground One is denied.

### 4.2    Ground Two

The parties vehemently dispute whether Ground Two—Petitioner's ineffective assistance of counsel claim based on Attorney Duquette's attachment of the incorrect jury instructions and failure to discuss with Petitioner that the victim must be a financial institution—is procedurally defaulted. ECF No. 21 at 12; ECF No. 22 at 3–4. At a minimum, the circuit court construed Petitioner's postconviction motion as raising an ineffective assistance of counsel claim. ECF No. 14-8 at 6. The question is therefore whether Petitioner raised the claim to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. ECF No. ECF No. 21 at 13 (citing ECF Nos. 14-2, 20-1). The Court need not wade into the procedural default issue, however, because the argument fails on its merits for the same reasons that Ground One fails.[5]

"A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668,

---

[5]Even if Petitioner did exhaust the claim and the Wisconsin Court of Appeals neglected to consider it, the Court would be constrained to review the circuit court's decision on the matter and apply AEDPA deference to that decision in lieu of a de novo review. *See Charlton*, 439 F.3d at 374 (citing *McFowler*, 349 F.3d at 446).

Case 2:22-cv-00934-JPS    Filed 03/18/24    Page 19 of 22    Document 23

687–88 (1984), *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011), and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)).

With respect to the first element, "[c]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985). The Court has already determined that Attorney Duquette's communication of the robbery of a financial institution charge to Petitioner was constitutionally adequate and that the Wisconsin Court of Appeals did not render a decision contrary to, or that unreasonably applied, clearly established Supreme Court precedent. The same is true for the circuit court's decision, which rested largely on the facts that (1) Petitioner testified at his plea hearing that he had read and understood the criminal complaint, which specifically included the allegedly omitted element, and (2) the circuit court recited the element to Petitioner when reading the charge out loud at the plea hearing. ECF No. 14-9 at 4–6. Further, as the Seventh Circuit reasoned as to a petitioner making a similar deficient counsel argument despite his own admissions on the record, "a motion that can succeed only if the defendant committed perjury at the plea proceedings must be rejected out of hand . . . ." *United States v. Merrill*, 23 F.4th 766, 770 (7th Cir. 2022) (quoting *United States v. Peterson*, 413 F.3d 825, 827 (7th Cir. 2005)).

As to the second element, "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" are by themselves insufficient to show prejudice, or a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty." *Id.* (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)); *Lee*, 582 U.S. at 363. As noted, and contrary to his instant contentions, the circuit court's finding that Petitioner understood the charge to which he was pleading guilty and

that his plea was knowing, intelligent, and voluntary—in light of the "contemporaneous evidence" before it, which the Court has already analyzed—was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Lee*, 582 U.S. at 369. Accordingly, Ground Two is denied.

5. **CONCLUSION**

In accordance with the foregoing analysis, Petitioner's amended petition for a writ of habeas corpus, ECF No. 8, will be denied. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In light of the well-settled principles discussed above, no reasonable jurists could debate whether Petitioner's amended petition has merit. The Court will, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the Clerk of Court is **DIRECTED** to substitute Christine Suter for Warden Peter Jaeger as the respondent on the docket;

**IT IS FURTHER ORDERED** that Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 8, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.